IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C., NAGRASTAR LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 6:16-03321-CV-RK |
| v. | ) ) ) | |
| MIKE BAKER, | ) ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Plaintiffs DISH Network L.L.C. ("DISH Network"), EchoStar Technologies L.L.C. ("EchoStar"), and NagraStar LLC ("NagraStar") (collectively, "Plaintiffs")' motion for default judgment against Defendant Mike Baker. (Doc. 11.) For the reasons below, the motion is GRANTED in part and DENIED in part.

**I. Background**

This action is brought pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* (Count I), the Federal Communications Act, 47 U.S.C. § 605 *et seq.* (Count II), and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 *et seq.* (Count III). (Doc. 1.)

**A. Facts Alleged in the Complaint**

DISH Network is a multi-channel video provider that delivers video, audio, and data services via a direct broadcast satellite system to approximately 14 million subscribers. (Doc. 1 at ¶ 9.) DISH Network uses high-powered satellites to broadcast, among other things, movies, sports and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price. (*Id.* at ¶ 10.) DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, pay and specialty broadcasters, cable networks, motion picture distributors, sports leagues, and other holders of programming rights. (*Id.* at ¶ 11.) The works broadcast on the DISH Network platform are copyrighted. (*Id.* at ¶ 12.) DISH Network

has the authority of the copyright holders to protect these works from unauthorized reception and viewing.  (*Id.*)  DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth.  (*Id.* at ¶ 13.)  The satellites then relay the encrypted signal back down to Earth where it can be received by DISH Network subscribers.  (*Id.*)  The subscribers utilize particular equipment necessary to decrypt and access the video, audio, and data services provided to them by DISH Network.  (*Id.*)

The equipment involved in a subscriber's DISH Network satellite television system consists of a compatible dish antenna, receiver, smart card which in some instances is internalized in the receiver, television, and cabling to connect the components.  (*Id.* at ¶ 14.)  EchoStar provides receivers, dish antenna, and other digital equipment for the DISH Network system.  (*Id.*)  Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar.  (*Id.*)  The receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as the entitlement control message and forwards that message to the smart card.  (*Id.* at ¶ 17.)  Provided that the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a control word.  (*Id.*)  The control word is then transmitted back to the receiver in order to decrypt the DISH Network satellite signal.  (*Id.*)  Each receiver and smart card is assigned a unique serial number which is used by DISH Network when activating the equipment, and to ensure the equipment only decrypts programming that the customer is authorized to receive as part of his subscription package and pay-per-view purchases.  (*Id.* at ¶ 15.)

NFusion Private Service ("NFPS") is a pirate internet key sharing ("IKS") subscription-based service that improperly provides end-users computer software and decryption codes needed to unscramble DISH Network television programming without authority and without payment of a subscription fee to DISH Network.  (*Id.* at ¶ 25.)  Defendant improperly used the NFPS pirate IKS service and server to obtain DISH Network's decryption control words to illegally receive and unscramble DISH Network copyrighted television programming.  (*Id.* at ¶¶ 26-27.)  Through IKS piracy, Defendant enjoys unlimited access to DISH Network programming, including premium and pay-per-view channels.  (*Id.* at ¶ 28.)

2

### B.     Procedural Background

On November 10, 2016, Plaintiffs filed a return of service of the Complaint showing that Defendant was served on September 12, 2016.  (Doc. 5.)  Defendant's Answer was due on or before October 3, 2016.  (*Id.*)  To date, no Answer has been filed.  On November 15, 2016, Plaintiffs filed a request for Clerk's entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure (doc. 8), and a Clerk's entry of default was entered on December 9, 2016 (doc. 10).  Plaintiffs then filed the instant motion for default judgment on January 6, 2017.  (Doc. 11.)  To date, there has been no response to the motion and the time for doing so has passed.

### C.     Motion for Default Judgment

Plaintiffs seek a default judgment only on Count III.  In addition to the well-pleaded factual allegations that are taken as true, Plaintiffs submitted sworn affidavits in support of their motion for default judgment. (Docs. 13, 14.)  Plaintiffs seeks statutory damages in the amount of $10,000 and a permanent injunction under 18 U.S.C. § 2520.

## II.     Standard

An entry of default from the Clerk of the Court pursuant to Federal Rule of Civil Procedure 55(a) is a prerequisite to a default judgment under Rule 55(b).  *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998).  Upon default, the well-pleaded factual allegations in the complaint are taken as true, except facts relating to the amount of damages, which must be proved separately by either a hearing or other evidence on the record.  *See Stephenson v. El-Batrawi*, 524 F.3d 907, 915-16 (8th Cir. 2008); *Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citation omitted) ("A default judgment entered by the court binds the party facing the default as having admitted all of the well-pleaded allegations in the plaintiff's complaint.").  "The need for a hearing is within the sound discretion of the district court under Fed. R. Civ. P. 55(b)(2)(B)."  *Stephenson*, 524 F.3d at 916 (citation omitted); *see e.g., J & J Sports Prods., Inc. v. Acevedo*, No. 4:09CV00496 SWW, 2010 WL 1980849, at *1 (E.D. Ark. May 13, 2010) ("No hearing on substantive issues is necessary if the evidence [is] sufficient to justify a default judgment is already before the court." (citation omitted)).

### III. Discussion

The Court now addresses the sufficiency of Count III, the cause of action under the ECPA.

#### A. Default Judgment

Any person who "intentionally intercepts . . . or procures any other person to intercept . . . [any] electronic communication" violates the ECPA. 18 U.S.C. § 2511(1)(a). "Section 2520 allows for a private right of action against those who violate section 2511." *See Dish Network L.L.C. v. Aime,* No. 15-CV-00582 (DLI)(MDG), 2016 U.S. Dist. LEXIS 28156, at *5-6 (E.D.N.Y. Mar. 3, 2016) (collecting cases). "Electronic communication" is defined under the ECPA to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" 18 U.S.C. § 2510(12). "'Electronic communication' includes encrypted satellite transmissions." *Aime,* 2016 U.S. Dist. LEXIS 28156, at *6 (collecting cases). Under the ECPA, "intercept" means to acquire "the contents of the wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "[U]sing an unauthorized descrambler to view encrypted satellite television programming 'intentionally intercepts' an 'electronic communication' within the meaning of the ECPA." *Aime,* 2016 U.S. Dist. LEXIS 28156, at *6 (collecting cases).

In two analogous cases, courts found that EchoStar and NagraStar should be denied judgment under the ECPA because neither plaintiff distributes "electronic communications" as required by the ECPA. *Aime,* 2016 U.S. Dist. LEXIS 28156, at *7; *Dish Network L.L.C. v. Friedman*, No. 11-CV-2894 (JS) (GRB), 2012 U.S. Dist. LEXIS 136586, at *6 (E.D.N.Y. Aug. 31, 2012). Section 2511(1)(a) only protects "electronic communications" and § 2520(a) only provides a private right of action to the "person whose . . . electronic communication is intercepted." Here, as in *Aime* and *Friedman*, neither EchoStar nor NagraStar are alleged to have distributed "electronic communications." (*See* Doc. 1 at ¶ 14 (EchoStar provides receivers, dish antenna, and other digital equipment for the DISH Network system. Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar.)). Therefore, the Court denies the motion for default judgment in favor of EchoStar and NagraStar.

By contrast, the motion for default judgment in favor of DISH Network is appropriate. DISH Network has plead facts, which are taken as true for the purposes of this motion, showing that Defendant intentionally intercepted its satellite television programming without proper authorization. The Court adopts DISH Network's proposed findings as follows:

a. DISH Network is a multi-channel video provider that delivers video, audio, and data services via a direct broadcast satellite system to approximately 14 million subscribers. DISH Network uses high-powered satellites to broadcast, among other things, movies, sports and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price. (Doc. 1 at ¶¶ 9-10.)

b. DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, pay and specialty broadcasters, cable networks, motion picture distributors, sports leagues, and other holders of programming rights. The works broadcast on the DISH Network platform are copyrighted. DISH Network has the authority of the copyright holders to protect these works from unauthorized reception and viewing. (*Id*. at ¶¶ 11-12.)

c. DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. (*Id.* at ¶ 13.) The satellites then relay the encrypted signal back down to Earth where it can be received by DISH Network subscribers. (*Id.*) The subscribers utilize particular equipment necessary to decrypt and access the video, audio, and data services provided to them by DISH Network. (*Id.*)

d. The EchoStar Technologies receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as the entitlement control message and forwards that message to the smart card. Provided that the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a control word. The control word is then transmitted back to the receiver in order to decrypt the DISH Network satellite signal. Each receiver and smart card is assigned a unique serial number which is used by DISH Network when activating the equipment, and to ensure the equipment only decrypts programming that the customer is authorized to receive as part of his subscription package and pay-per-view purchases. (*Id*. at ¶¶ 15, 17.)

e. NFPS is a pirate IKS television service that improperly provides end-users computer software and decryption codes needed to unscramble DISH Network television programming without authority and without payment of a subscription fee to DISH Network. (*Id*. at ¶ 25.)

f. Defendant violated the ECPA by improperly utilizing the NFPS pirate IKS television service and server to obtain DISH Network's decryption control words to illegally receive and unscramble DISH Network copyrighted television programming. (*Id*. ¶ 27.)

Based on the foregoing, Defendant is liable to DISH Network under 18 U.S.C. § 2511(1)(a) for which the Court may award damages under §2520(c)(2).

**B.      Damages**

Here, DISH Network seeks $10,000 in statutory damages under 18 U.S.C. § 2520(c)(2). That section provides that "the court may assess as damages whichever is the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $ 10,000." 18 U.S.C. § 2520(c)(2). "The Court has discretion under Section 2520 to award either the statutory sum or no damages at all[,]" but the Court may not "award an amount that falls between those two figures." *DISH Network L.L.C. v. Gonzalez*, No. 13-cv-00107-LJO-SKO, 2013 WL 2991040, at *5-6 (E.D. Cal. June 13, 2013) (collecting cases). "[F]actors courts have considered to determine an award of statutory damages under the ECPA include 'the severity or minimal nature of the violation; whether there was actual damage to the victim; the extent of any intrusion into the victim's privacy; the relative financial burdens of the parties; whether there was a reasonable purpose for the violation; and whether there was any useful purpose to be served by imposing the statutory amount.'" *Aime*, 2016 U.S. Dist. LEXIS 28156, at *8 (citing *Dish Network L.L.C. v. Bauder*, 2015 U.S. Dist. LEXIS 42706, 2015 WL 1508419, at *7 (M.D. Fla. 2015)).

DISH Network has not submitted evidence for a specific calculation of actual damages. (*See* Doc. 12 at 13 (explaining Defendant's inability to establish actual damages.)) However, DISH Network has submitted evidence that it suffers actual harm from the theft of its programming (doc. 14), and therefore, the Court finds that the evidence is sufficient to award DISH Network the statutory amount of $10,000.

6

### C. Permanent Injunction

DISH Network also seeks injunctive relief. The ECPA authorizes such a remedy as it allows a court to grant "preliminary and other equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1). In deciding whether to grant a permanent injunction, the court considers the following factors: "(1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties: and (3) the public interest." *H&R Block Enters. LLC v. Ascher*, No. 4:15-cv-00178-SRB, 2015 U.S. Dist. LEXIS 111259, at *7 (W.D. Mo. Aug. 20, 2015) (citing *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008)).

Here, DISH Network has submitted evidence that it suffered irreparable injury based on the piracy of its service. (Doc. 14 at ¶¶ 18- 21.) As another court held with respect to the same issue, the statutory damages provided for in this circumstance, "while significant, are inadequate to prevent future piracy without injunctive relief." *Dish Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595, 601-02 (W.D.N.Y. 2011). Additionally, "the only hardship to Defendant from this injunction would be to prevent him from engaging in further illegal activity . . . [and the] public interest is not disserved by an injunction as it will protect copyrights and help enforce federal law." *Id.* For these reasons, the Court finds that a permanent injunction is appropriate in this case.

### IV. Conclusion

Accordingly, it is ORDERED that:

1. The motion is GRANTED in part and DENIED in part. The motion for default judgment in favor of EchoStar Technologies L.L.C. and NagraStar LLC is DENIED. The motion for default judgment in favor of DISH Network L.L.C. is GRANTED.

2. The Court awards DISH Network L.L.C. statutory damages in the amount of $10,000 to be paid by Defendant under 18 U.S.C. §§ 2511(1)(a) and 2520. Defendant and anyone in participation with, or at the direction or control of Defendant is hereby immediately PERMANENTLY ENJOINED from:

> A. intercepting DISH Network L.L.C.'s satellite television transmissions without DISH Network L.L.C.'s authorization through any means including internet key sharing;

7

B. assisting others in intercepting DISH Network L.L.C.'s satellite television transmissions without DISH Network L.L.C.'s authorization through any means including internet key sharing; and

C. testing, analyzing, reverse engineering, manipulating or otherwise extracting codes or other technological information or data from DISH Network L.L.C.'s satellite television receivers, access cards, data stream or any other part or component of DISH Network L.L.C.'s security system or other technology used to gain access to DISH Network L.L.C.'s programming including through the use of internet key sharing; and

3. All Plaintiffs are directed to file a status report regarding their intentions for proceeding on Counts I and II within fourteen (14) days from the date of this Order.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 3, 2017